PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CASE NO. 5:06CR239-1 |
| Plaintiff, ) | |
| ) | JUDGE BENITA Y. PEARSON |
| v. ) | |
| MICHAEL LASHAWN SPRAGLING, ) | **ORDER** |
| ) | [Resolving ECF No. 398] |
| Defendant. ) | |

Pending is Defendant Michael Lashawn Spragling's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), initially filed *pro se.* ECF No. 398. The Court appointed counsel, who filed a supplemental motion. ECF Nos. 405; 406 (SEALED). The Government has filed a response in opposition, along with a sealed supplemental response. ECF Nos. 411; 412 (SEALED). For the reasons explained below, Defendant's motion is granted.

**I. Background**

On May 10, 2006, Defendant and seven co-defendants were named in a multi-count drug conspiracy indictment. ECF No. 15 at PageID #: 169-78. On December 27, 2006, pursuant to a written plea agreement, Defendant pled guilty to possession with intent to distribute marijuana (conspiracy) in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B); possession with intent to distribute cocaine and heroin (conspiracy) in violation of 21 U.SC. §§ 846, 841(a)(1), and 841(b)(1)(A); money laundering in violation of 18 U.S.C. §1956(a)(1)(A)(i); and the unlawful possession of a STEN-type machinegun in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871. ECF No. 132 at PageID #: 1012-30. The Court later sentenced him to 262 months. ECF No. 136 at PageID #: 1046-51. Defendant is currently serving his prison sentence at FCI

(5:06CR239-1)

Schuylkill.[1]  Notably, Defendant has served over 97% of his 262 months.  He is scheduled to be transitioned to a halfway house next week, on October 6, 2020, and is scheduled to be released approximately six months thereafter, on April 4, 2021.  ECF No. 406 at PageID #: 3526 (SEALED).

Defendant avers that his existing medical conditions, specifically atherosclerosis, acute coronary occlusion, and pre-diabetes, put him at increased risk of harm due to the COVID-19 pandemic.  *Id*. at PageID #: 3525 (SEALED).  He asks that the Court reduce his sentence to time served and impose an additional supervised-release term, with home confinement and other conditions the Court deems appropriate and necessary.  *Id*. (SEALED).  Defendant seeks approval to live with his mother, and represents that the USPO has conducted a residential suitability investigation of the mother's home and has approved it.  *Id.* at PageID #: 3526 (SEALED).

## II. Legal Standard for Seeking Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP") or the defendant if the court finds that "extraordinary

---

[1] According to the Bureau of Prisons ("BOP") website (http://www.bop.gov/inmateloc/ (last visited Oct. 2, 2020)), Defendant is currently housed at FCI Schuylkill.  His anticipated release date is April 4, 2021.  FCI Schuylkill houses 1,030 inmates.  *See* https://www.bop.gov/locations/institutions/sch/ (last visited Oct. 2, 2020).  As of October 2, 2020, there is one (1) confirmed active cases of COVID-19 at FCI Schuylkill.  Zero (0) inmates have died and zero (0) inmates and one (1) staff have recovered from COVID-19.  *See*  https://www.bop.gov/coronavirus/ (last visited Oct. 2, 2020).

2

(5:06CR239-1)

and compelling reasons warrant such a reduction," and "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." The Sentencing Commission also counsels that Defendant not pose a danger to the safety of the community. U.S.S.G. § 1B1.13(2). In making a determination regarding compassionate release, the Court must consider the "the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable." *Id*.; *see also* § 3582(c)(1)(A).

A defendant is eligible to seek compassionate release from a court after he has exhausted all administrative rights to appeal the BOP's failure to bring a motion on his behalf or thirty days have elapsed since requesting that the warden of his facility initiate such action. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020) ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

### III. Discussion

The Court has received Defendant's April 29, 2020 request to the Warden. ECF No. 398-2 at PageID #: 3492-93. The Warden denied Defendant's request for release on May 20, 2020, explaining that "[i]n view of the fact SCP Schuylkill does not have any confirmed staff or inmate cases of COVID-19 at the present time, the conditions of your release present a significantly higher risk of contracting COVID-19 than your current confinement[.]" ECF No. 398-3 at PageID #: 3494-96. Because 30 days have lapsed since Defendant made his request, Defendant's motion is properly before the Court.

### A. Extraordinary and Compelling Reasons

3

(5:06CR239-1)

To determine whether extraordinary and compelling reasons justify Defendant's release, the Court must decide if a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable policy statement provides that if a defendant is not a danger, release may be warranted when the following conditions manifest:

(A) Medical Condition of the Defendant.

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii) The defendant is

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant. The defendant

    (i) is at least 65 years old;

    (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

    (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.

(5:06CR239-1)

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons. As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1.[2]

Defendant seeks modification under section (A)(ii)(I), arguing that his serious medical conditions, combined with the risks of COVID-19, create a unique risk justifying an early release from incarceration. As explained in Defendant's sealed submission (ECF No. 406), Defendant is 50 years old, and suffers from a heart conditions (atherosclerosis coronary of native coronary artery and coronary occlusion) and pre-diabetes, which independently increases his risk of stroke. As a result of his atherosclerosis coronary of native coronary artery, he has been hospitalized and had a stent implanted to address his lack of blood flow. The CDC has recognized that serious heart conditions and Type 2 Diabetes independently increase an individuals risks due to COVID-19.[3]

---

[2] Although the applicable policy statement has not been modified to keep pace with the amended statute that now allows an inmate to seek his own release after having met certain conditions, its helpfulness persists.

[3] Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), People Who Are at Higher Risk for Severe Illness, https://www.cdc.gov/coronavirus/2019-ncov/needextra-precautions/people-at-higher-risk.html.

5

(5:06CR239-1)

The government does not meaningfully dispute that Defendant's conditions meet the "extraordinary and compelling" criteria, but urge the Court to consider that Defendant's "condition would be cause for weightier concern if he [were] in an institution that was suffering from a severe COVID-19 outbreak[,]" and that, Defendant's "health at this time is quite good." ECF No. 411 at PageID #: 3572 (footnote omitted); *see also* ECF No. 412 (SEALED). The first argument holds little water at this juncture, when the BOP is preparing to release Defendant to a halfway house in just a week. A halfway house, by its very nature, will be a less controlled environment than FCI Schylkill, and the government presents no argument that Defendant can be kept as safe following transfer there. The concerns raised in the second argument miss the mark. The questions regarding Defendant's health are not just whether he is currently healthy, but whether his conditions present increased risks should he be exposed to COVID-19 while under the government's charge. Defendant paints a persuasive picture that, given his health conditions, he is at unique risk of substantial, potentially fatal, consequences should be exposed to COVID-19.

Having considered the relevant medical documentation, the applicable policy statement, and the CDC Guidelines, the undersigned finds that Defendant's heart conditions and pre-diabetes, in concert with the COVID-19 public health crisis constitute an "extraordinary and compelling" reason to modify Defendant's sentence, particularly in light of the fact that Defendant will soon be transferred to a halfway house.

### B. Other Considerations

The Government concedes that Defendant's case may present an extraordinary and compelling reason allowing compassionate release but contends that granting Defendant's relief

(5:06CR239-1)

would not achieve the Sentencing Commission's goals of punishment and deterrence. ECF No. 411 at PageID #: 3573-74. The Court acknowledges the Government's arguments regarding the nature and circumstances of the offense and the need for the sentence imposed but nonetheless finds that Defendant's motion should be granted.

First, the Government argues: "Releasing [Defendant] early would not[] reflect the seriousness of this offense." ECF No. 411 at PageID #: 3572. While Defendant's crime was undoubtably serious, and generally weighs against compassionate release, the Court does not find the Government's argument persuasive in light of the Government's documented prior position on the length of Defendant's sentence. The Government agreed affirmatively to recommended that Defendant receive a two level reduction for acceptance of responsibility. ECF No. 132 at PageID #: 1017. Such a reduction would have resulted in a guideline sentence of 188-235 months in accordance with the anticipated Total Adjusted Offense Level of 36 contemplated by the Plea Agreement. *Id*. at PageID #: 1018; ECF No. 159 at PageID #: 3207. Had the sentencing judge accepted the Government's recommendation and imposed a guidelines sentence, Defendant would have been released between two and five years ago. The sentencing judge ultimately rejected the government's recommendation that it find Defendant had accepted responsibility for his actions,[4] resulting in a final Offense Level of 38, and a guidelines calculation of 262-327 months. ECF No. 159 at PageID #: 3194-3203, 3206.[5] Particularly in light of the Government's arguments at the

---

[4] Defendant pled guilty only after trial had commenced, and initially sought to withdraw that plea. ECF No. 159 at PageID #: 3199-3200.

[5] The Court also notes that there was a non-frivolous dispute concerning

(continued...)

…
…

(5:06CR239-1)

time of sentencing, the Court finds that a sentence of approximately 256 months of incarceration, followed by five years of supervised release, to be consistent with the goal of sentencing,[6] and that such a sentence does adequately reflect the seriousness of Defendant's conduct. *See* 18 U.S.C. § 3553(a).

The government also argues that "[r]eleasing [Defendant] early would not ... protect the public from future crimes." ECF No. 411 at PageID #: 3573. The government points to Defendant's criminal history and conduct while in prison. Aside from the offense which resulted in the subject conviction, Defendant's offenses do not suggest that release to home confinement as opposed to a halfway house would put the public at a significantly increased risk. Of note, it does not appear that Defendant has a violent criminal or disciplinary history. He was arrested for carrying a concealed weapon in 1988 when he was 18; for disorderly conduct in 1990 and 1993; he was then fined in 1998 and 1998 concerning the care of his pit bulls; and finally placed on probation for failing to pay child support in 2003. PSR at 9-10. While the government correctly

---

[5](...continued)
Defendant's criminal history level which was resolved against the Defendant. ECF No. 3203-05. Specifically, the dispute was whether Defendant had engaged in any overt act in furtherance of the alleged conspiracy whilst he was on parole for failing to pay child support. *Id.*; PSR at 10. Had the dispute been resolved in Defendant's favor, the guidelines would have been further reduced, as Defendant would have proceeded with a Criminal History Category of I rather than II. While the Court does not challenge the sentencing judge's exercise of discretion, the Court does consider in evaluating the appropriateness of a reduced sentence, that a number of discretionary factors could have resulted in a substantially lower guidelines calculation.

[6] In considering sentencing deviations, the Court has considered that Defendant's co-conspirators received sentences ranging form 27 to 144 months. ECF No. 135 at PageID #: 3163-64 (SEALED).

(5:06CR239-1)

notes he has not been a model prisoner, his disciplinary record contains only three entries over his 20+ years of incarceration. More than a decade ago, Defendant refused to obey an unspecified order and admitted to not being in his room before count cleared. ECF No. 411-1 at PageID #: 3575. Then, about four years ago, he struck another inmate with a closed fist, but did not cause serious injury. *Id.* Only this most recent incident suggests violence, but not seriously. The government has not provided any of the underlying facts of that offense, or indicated to the Court that a single skirmish with another inmate suggests some pattern of violence not otherwise reflected in Defendant's disciplinary records.

While the Court is certainly concerned that there may be some risk to the public upon Defendant's release, the Court weighs this concern not against further incarceration, but the relative risk between Defendant residing at a halfway house as opposed to on supervised release at his mother's home, where the Court may impose stringent conditions limiting Defendant's interactions with the public. Indeed, given the current COVID-19 crisis and Defendant's underlying health concerns, it is in Defendant's own interest to keep public interactions to a minimum, a goal which he will be better able to achieve residing with his mother. The Court agrees with the sentencing judge that an extended period of supervised release, which, in and of itself imposes significant restrictions on Defendant's liberty, also "may serve as some protection from further crimes." ECF No. 135 at PageID #: 3162 (SEALED).

The Court finds that a sentence reduction is warranted. Defendant's serious medical conditions, in light of the COVID-19 pandemic, outweigh any marginal benefit he

9

(5:06CR239-1)

would receive from six months in a halfway house. A sentence reduction is therefore in line with the applicable Sentencing Guidelines policy statement and the § 3553(a) factors. Specifically, the Court finds that Defendant's release with a condition of home confinement, in addition to the others imposed at sentencing, adequately address concerns regarding Defendant's violent behavior in 2016. ECF No. 405 at PageID #: 3510.

### IV. Conclusion

For the foregoing reasons, Defendant's motion for compassionate release is granted. Defendant's sentence is reduced to time served. As soon as safely possible, Defendant shall be released to begin his term of supervised release at the approved home of his mother with the added condition of home confinement.[7] Defendant is physically restricted to his mother's residence and permitted to leave only for medical appointments, unless he has the express permission of his supervising probation officer or the Court. The Court orders home confinement through Defendant's existing anticipated release date of April 4, 2021. All other terms of supervised release imposed at sentencing remain in place. *See* ECF Nos. 129, 136. The Court leaves to the discretion of Defendant's supervising probation officer the monitoring of Defendant's compliance with home confinement. The Court will consider modifications to the condition of home confinement, including whether to allow Defendant to work as a trucker at

---

[7] It is the Court's understanding that Defendant has, or is in the process of, undergoing a quarantine period in preparation for his anticipated transfer to the halfway house. Therefore, Defendant's sentence is reduced to time served plus whatever number of days is required for him to complete an effective period of quarantine, as determined by the BOP.

10

(5:06CR239-1)

Spragling Towing (ECF No. 398 at PageID #: 3489), if good cause is presented after a reasonable period of compliance has passed.

    IT IS SO ORDERED.

| | |
|---|---|
|  October 2, 2020 |   /s/ *Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |